## Case No. 11,428.

### The PRINCE LEOPOLD.

[Blatchf. Pr. Cas. 89.] [1]

District Court, S. D. New York.  Dec., 1861.[2]

PRIZE — WHERE ARREST MAY BE MADE AND BY WHOM—PRACTICE.

1. Where an offence against the prize law has been committed, the vessel and cargo may be arrested anywhere at sea, or within the dominions of the capturing power, and by any person, officer, or citizen, as property belonging to the government.

2. The practice in prize proceeding in the courts of the United States is governed by the rules of admiralty law disclosed in the English reports, when not regulated by decisions or rules of the American courts.

Vessel and cargo condemned, as enemy property. The captors allowed to produce further proof on the question of breach of blockade.

BETTS, District Judge. This vessel was arrested September 11, 1861, in the harbor of New York, by the marshal, and was libelled as a prize, and also was forfeited under the act of July 13, 1861 [12 Stat. 255]. The first question raised on the defence, by the pleadings and on argument, went to the regularity of the proceedings—First. In respect to the arrest of the prize, that there is not a sufficient specification of the cause of arrest, and also that the jurisdiction of the court is, in that respect, rescinded by the act of congress. These considerations are sufficiently discussed in the previous cases of The Sarah Starr [Case No. 12,352] and The Aigburth [Id. 105], and the authorities dispense with all formalities of charge in the libel. 3 Phillim. art. 470; Am. Enc. art. "Prize," by Story, J. Second. That the seizure was by civil officers in the port of New York. When an offence against the prize law has been committed, the vessel and cargo may be arrested anywhere at sea, or within the dominions of the capturing power, and by any person, officer, or citizen, as property belonging to the government. By the English practice, customhouse officers capture vessels in port as prize (The Elize, 1 Spinks' Prize Cas. 88); and the seizure may be made even in the London docks (The Conqueror, 2 C. Rob. Adm. 303). The practice in prize proceedings in the courts of the United States is governed by the rules of admiralty law disclosed in the English reports (Brown v. U. S., 8 Cranch [12 U. S.] 135, per Story, J.; Jecker v. Montgomery, 18

---

[1] [Reported by Hon. William B. Woods, Circuit Justice, and here reprinted by permission.]

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirmed in Case No. 11,429.]

How. [59 U. S.] 110; see arguments and decisions in prize proceedings, Jecker v. Montgomery, 13 How. [54 U. S.] 498), when not regulated by decisions or rules of the American courts. The exceptions to the place and manner of the capture, and to the mode of pleading it, are not tenable.

On the merits: First, the claimants had sufficient notice that the port of Newbern was under blockade, with other ports, along the eastern coast of the United States south of Maryland. That the notice reached them before the blockade was made perfect on the part of the United States, or was efficient by the presence of an adequate force, is a fact not established by the evidence before the court, but may yet be made out by further proofs on the part of the captors. The vessel went to sea from Newbern, North Carolina, on the 1st of August. She was built in North Carolina, and was owned by Ellis, a merchant of Newbern, who shipped the crew on board on the 25th of July. He transferred her on the 16th or 18th of July to McLeod, who was a neutral British merchant, domiciled in business for several years previous in Charleston, and the British registry was made out in the name of McLeod. One of the crew testifies that the master, Wallace, told him in Newbern that he was part owner of her. She was loaded at Newbern with turpentine. The cargo is claimed by Wade, who came with it as passenger on the vessel. By the manifest, the cargo was shipped by McLeod (who admits that he belongs to the Confederate States), and was consigned to Wade. The cargo was put on board on the 23d of July. Wallace, the master, testifies that Wade told him the cargo belonged to McLeod. Wade, examined as a witness, is a native of North Carolina, and a resident there. He claims to be, in his private sentiments, a loyal citizen of the United States, opposed to the Rebellion, and that he designed to export the cargo claimed by him, and to withdraw from the state and travel in Europe. His private opinions cannot be inquired into by the court. He, as a native resident of the state, is unequivocally by law subject to all the responsibilities attached to his birth and residence, in respect to property he acquires in the enemy country and attempts to export from it. The points adjudged in the cases of The Sarah Starr [Case No. 12,352] and The Aigburth [Id. 105] apply to this, and must govern in these particulars the decisions of the case.

Judgment for the libellants, condemning the vessel and cargo as enemy property. The libellants are permitted to give further proofs on the question of breach of blockade, if offered within ten days after notice of this decree. The report of the navy department to the secretary of state, dated July 24, 1861, does not supply definite and adequate statements of the forces actually maintaining the blockade off the port of Newbern, or in that direct vicinity. It must be presumed to be within the competency of the navy department to prove affirmatively the acts of blockade performed by the squadrons, or particular vessels assigned to that service.

This decree was affirmed, on appeal, by the circuit court, July 17, 1863. [Case No. 11,429.]